## In the matter of JOHN L. CLARK.

On *habeas corpus*, a court or judge before whom is brought a prisoner, arrest-
ed as a *fugitive from justice*, by a warrant from the executive of one state
on the requisition of the executive of another state under the constitution
and laws of the United States, will not enquire as to the *probable guilt* of
the accused; the only enquiry is whether the warrant on which he is ar-
· rested states that the fugitive has been demanded by the executive of the
state from which he is alleged to have fled, and that a copy of the indict-
ment, or an affidavit, charging him with having committed *treason, felony,*
or other *crime*, certified by the executive demanding him as authentic, have
been presented.

An offence made *indictable* by statute is a *crime*, within the meaning of the
constitution and law of congress on this subject.

When this proceeding is had under the comity of nations, *it seems* that an
offender would be delivered up only when charged with crimes of great
ᶜ atrocity, or deeply affecting the public safety.

The provisions of the *revised statutes* are inapplicable to the case of a *fugi-
tive from justice*, demanded under the act of congress.

In a case of this kind, where a prisoner is remanded, the court will not grant
a *stay of proceedings* on the prosecution of a writ of error.

A HABEAS CORPUS was allowed in open court, on the first
day of the present term, directed to H. G. Mumford, sheriff
of the county of Providence, in the state of *Rhode Island,*
and to J. L. Hays, a police officer of New-York, command-
ing them to bring before the CHIEF JUSTICE, at his cham-
bers, *John L. Clark*, whom it was alleged they had in cus-
tody, and to exhibit the cause of his detention.   Clark was
brought before the chief justice, and the sheriff returned that
he had him in custody, by virtue of a warrant issued by the
governor of this state, in the following words:

" Enos T. Throop, governor of the state of New-York, to
the sheriff of the city and county of N. York, and the sheriffs,
constables, and other peace officers of the several counties in
the said state : Whereas, it has been represented to me by the
governor of the state of Rhode Island, that John L. Clark, late
of Providence, in the said state, has been guilty of frauds in
abstracting from the Burrilville Bank, in that state, money,
notes, and bank bills, while president of said bank, in a fraud-
ulent manner, which said acts are made criminal by the laws

of that state; and that he had fled from justice in that state, and has taken refuge in the state of New-York; and that said governor of Rhode Island has, in pursuance of the constitution and laws of the United States, demanded of me that I should cause the said John L. Clark to be arrested and delivered into the custody of Henry G. Mumford, sheriff of the county of Providence, who is duly authorized to receive him into his custody, and convey him back to the said state of Rhode Island: And whereas, the said representation and demand is accompanied by an affidavit taken before a justice of the peace of the said state of Rhode Island, whereby the said John L. Clark is charged with the said crime, which affidavit is certified by the said governor of Rhode Island, to be duly authenticated: You are therefore required to arrest the said John L. Clark, wherever he may be found within the state, and to deliver him into the custody of the said Henry G. Mumford, to be taken back to the said state from which he fled, pursuant to the said requisition. Given under my hand, and the privy seal of the state, at the city of Albany, this fifth day of May, in the year of our Lord one thousand eight hundred and thirty-two."

Clark made an affidavit in the following words, which was submitted to the chief justice, viz. "City and county of New-York, ss. John L. Clark, now a prisoner, and detained and produced under the habeas corpus hereunto subjoined, being sworn, deposeth and saith, that he has seen and read the warrant for his arrest, as set forth in the return to the habeas corpus, issued by and under the signature of his excellency governor Throop. That according to the information and belief of this deponent, and as he is advised by counsel, and believes to be true, this deponent has not committed any act or thing, as recited in said warrant, and that he is not guilty of any act or thing which is a crime, or made criminal, under and by the laws of the state of Rhode Island, and which is made the pretence for said warrant and the arrest of this deponent, and this deponent wholly denies the guilt as recited in said warrant. This deponent expressly denies that he has fraudulently abstracted from the Burrilville Bank of Rhode Island money, notes and bank bills, while president of said bank, or at any

time, or in any manner, which is made criminal by the laws of that state. On the contrary thereof, this deponent says that he has not at any time abstracted or taken from said bank money, notes and bank bills, other than what has been paid to him by the cashier or other officer of that bank, and upon vouchers or discounted paper entered in course of business upon the books of the bank, and sanctioned by the direction, or some part thereof, or committees, or persons duly authorized in the premises. This deponent therefore denies all or any abstraction of money, or notes and bills from this bank, or that he has been guilty of frauds in abstracting from the said bank, by acts which are made criminal by the laws of Rhode Island, as he is advised and verily believes to be true. This deponent further saith that he left the state of Rhode Island on private business, and to avoid arrest on civil process for enormous and oppressive amounts, and he had cause to apprehend further and oppressive arrests in that state, where, by its laws, an insolvent can only be discharged from severe imprisonment by act of the legislature, and that under the excitement arising from having been connected with an unfortunate and failing bank, this deponent was and is apprehensive of severe and cruel imprisonment, under pretence of demands on civil process. This deponent has no apprehensions of criminal proceedings on, or by virtue of the matters set out and mentioned in said warrant of arrest, or any other act committed by this deponent ; and from information and belief, this deponent says that the present proceedings alleging crime under the laws of Rhode Island are set on foot in and carried on by the bank of Suffolk, in the state of Massachusetts, and by Charles F. Tillinghast, the known counsel of said Suffolk bank ; and this deponent insists and verily believes that his present arrest and the proceedings criminally, are for the sole and only purpose to remove this deponent within the jurisdiction of Rhode Island, whereby he will there be held under various other process and proceedings, not of a character made criminal under the laws of Rhode Island. This deponent, from information, believes, and he therefore insists, that the papers and proceedings alleged to be certified as authentic, by the governor of Rhode Island to the governor of New-York, when examined, will not be found to

set forth and charge against this deponent in an adequate man-
ner, any acts made criminal by the laws of Rhode Island."

The chief justice intimating his opinion that Clark was
not entitled to be set at liberty, his counsel asked to be
heard before the whole bench, to which the chief justice
consented; and on the next day

*S. Tallmadge*, (*S. S. Knapp, S. A. Crapo & A. W. Dodge*
being associated with him as counsel for Clark,) contended
that Clark was entitled to his discharge, on the following
grounds : That to enable the governor of a state to demand
an individual from the governor of another state, the crime
charged must be one of high moral turpitude, and one uni-
versally so considered. That the crime charged should be
one, upon conviction for which the party would be *liable to
some ignominious punishment,* such as imprisonment, or the
like ; whereas the laws of Rhode Island only declare that
the defendant, if convicted, should *be fined* not exceeding
five thousand dollars. That the crime must appear to have
been committed, and that the governor's warrant only *recited*
that embezzlements had been made by Clark, while there
were no facts sufficient for the court to judge whether or not
there had been any such crime committed. That this court
should require the production of the affidavit upon which the
warrant was grounded ; the return of the habeas corpus does
not show whether the course pointed out by the act of con-
gress, (act of February 12, 1793, sec. 1, Story's edition Ls.
U. S. page 281,) has been strictly pursued. That the court
cannot intend that such affidavit was made, or if made, was
certified as authentic by the proper officer, or charged a
*criminal offence,* or that there were sufficient grounds to
charge Clark. Taking the governor's warrant as the sole
guide by which to ascertain the legality of the arrest, inde-
pendent of the affidavit, it did not appear that Clark had
been guilty of any crime under the laws of Rhode Island.
By the governor's warrant it appeared that Clark is charged
as having " been guilty of frauds in abstracting from the
Burrilville Bank in that state, money, notes and bank bills,
while president of said bank, in a fraudulent manner." Ad-

NEW-YORK, mitting this charge to be true, it did not constitute a crime
May, 1832. under the Rhode Island laws. It must be shewn that he has
In the matter been guilty of the specific offence defined in the statutes of
of Clark. Rhode Island. The language of the act is : "If any presi-
dent, &c. *shall fraudulently manage or conduct the affairs or
business of such bank,* whereby the public or individuals deal-
ing at or with said bank shall be defrauded in the payment
of their just demands against said bank," &c. &c. Under
this act, if the president should abstract the funds, &c. in a
fraudulent manner, it would not be indictable unless it be *also*
shewn that by means thereof, the public or individuals deal-
ing, &c. have been defrauded *in the payment of their just
demands ;* it did not appear by the governor's recital that
the Burrilville Bank owed a single dollar. Besides, by the
act of Rhode Island, jurisdiction in these cases is given to the
supreme judicial court of that state, and here it appears that
the affidavit of the offence charged is made before a justice
of the peace. The fact whether the alleged offence is a
crime by the laws of Rhode Island was certainly inquirable
into by the court. The bare representation of the governor
of Rhode Island was not sufficient. The leading case, *The
King* v. *Roe and Kendall,* 12 *Mod. R.* 82, says : "The court
then held that the true cause of commitment ought to be
specified in the warrant." This case is better reported, 1
*Ld. Raym.* 65, where the court say that the warrant was
bad because it did not specify first, for *what reason* Sir James
Montgomery was committed. The same case is reported,
*Salk.* 347 ; it is there said that Sir James Montgomery's
treason ought to have been inserted in the warrant, with an
allegation that Sir James did the fact. This court will cer-
tainly require the same strictness in the description of a
crime committed in a foreign jurisdiction, before they will
permit the arrest of a citizen, as they would if such citi-
zen was indicted within our own jurisdiction. Upon the re-
turn of the habeas corpus, the judge is not confined to the
face of the return, but he is to examine *into the facts* contain-
ed in the return. 2 *Kent's Com.* 26. "The power gives to
the judge who takes cognizance of the case upon the return
of the writ, *the character of a court of review, even to the acts
of the co-ordinate magistrate.*" *Idem.* This court should en-

quire into the fact whether the prisoner has been guilty of NEW-YORK, the alleged offence, &c. *The matter of Washburne*, 4 *Johns.* May, 1832. *Ch. R.* 106. The law of this state, 2 *R. S.* 569, § 48, al- In the matter lows the party, upon being brought up on the return of *any* of Clark. writ of habeas corpus, to deny under oath any material facts set forth in such return, or allege any facts to show that his detention is unlawful. This is a *general* act, applicable to *all* cases; and the defendant by his affidavit has fully de- nied every material allegation in the return.

*J. A. Spencer*, for the sheriff. The proceedings in this case for the arrest of the prisoner have been had under the pro- vision of the constitution of the general government relative to fugitives from justice, and under the act of congress pre- scribing the forms of proceeding in such cases, which have been strictly pursued. The provision in the constitution, that a person charged with treason, felony or other *crime*, who shall flee from justice, &c. shall be delivered up, em- braces all offences against the public for which a party may be *indicted* and criminally punished, although such punish- ment be not ignominious. The court will not require the production of the papers exhibited to the governor of this state, on the strength of which the warrant was issued on which the prisoner was arrested; it is to be presumed they remain in his possession. It is enough for the court that the warrant recites the proceedings to have been had, made necessary by the law of congress. Nor will the court look into the affidavit of the prisoner which has been exhibited by him, this not being a case in which they can inquire into the presumption of the guilt or innocence of the prisoner; the only inquiry being whether the case comes within the provision of the constitution and the law of congress passed to carry it into effect. As to the objection that jurisdic- tion of the offence with which the prisoner is charged is given to the supreme judicial court of Rhode Island, and that here the complaint appears to have been made to a justice of the peace, the answer is that such complaint prob- ably is a more initiatory proceeding to give that court juris- diction of the person of the prisoner. At all events, the pro-

NEW-YORK,
May, 1832.

In the matter
of Clark.
ceeding before the magistrate is a compliance with the act of congress, and this court will not inquire in what tribunal the prisoner is intended to be arraigned, after he shall have been taken to Rhode Island.

*By the Court,* SAVAGE, Ch. J.   Civilized nations have seen the necessity and propriety of surrendering fugitives from justice, that they may be tried by the laws of the country in which the offence was committed.   This matter has usually been arranged by treaty; but where no treaty exists, the comity of nations requires that offenders against the laws of one nation shall not find a sanctuary in another.   In such cases, a state or nation which is required to surrender an individual who is under the protection of its laws, owes it to itself as well as the individual concerned, to institute an examination into the facts alleged to constitute the crime, and to surrender the person charged, if upon such examination there appears satisfactory evidence of guilt.   Where a treaty exists, the evidence of the commission of the crime, as well as the circumstances under which the surrender is to be made, will of course be explicitly stated and in practice pursued.   Had our federal constitution and laws been silent on this subject, and no conventional arrangement existed between the several states composing our confederacy, it may be conceded that the practice arising from the comity of nations would be applicable; and before we would surrender any person demanded as a fugitive from justice, it would be our duty to examine into the facts of the alleged crime, and be satisfied that no reasonable doubt existed as to his guilt.   But under our federal government, this matter has been regulated, and we are not left to the uncertainty arising from an inquiry in one state into the particulars of an offence committed in another.   The constitution of the United States provides that " A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."   Here then is the law on the subject—a positive regulation and tantamount to a treaty stipulation; and we

are not to resort to the comity of nations for our guidance. Every person who is *charged* with an offence in any state and shall flee to another state, shall be delivered up. It is not ne- cessary to be shewn that such person is guilty; it is not necessary, as under the comity of nations, to examine into the facts alleged against him constituting the crime; it is suffi- . cient that he is *charged* with having committed a crime.

But *how charged?* The law of congress has answered this question as follows: " Whenever the executive authority of any state in the union, or of either of the territories, shall demand any person as a fugitive from justice, of the executive authority of any such state or territory to which such person shall have fled, and shall moreover produce the copy of an indictment found, or an affidavit made before a magistrate of any state or territory as aforesaid, charging the person so demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged fled, it shall be the duty of the executive authority of the state or territory to which such person shall have fled, to cause him or her to be arrested and secured." In order, therefore, to give the governor of this state jurisdiction in such a case, three things are requisite: 1. The fugitive must be demanded by the executive of the state from which he fled; 2. A copy of an indictment found, or an affidavit made before a magistrate charging the fugitive with having committed the crime; 3. Such copy of the indictment or affidavit must be certified as authentic by the executive. If these pre-requisites have been complied with, then the warrant of the governor has properly issued, and the prisoner is legally *restrained of his liberty.* We must look at the return to the habeas corpus for the facts. 1. It is there expressly recited that the governor of Rhode Island has demanded that John L. Clark be arrested and delivered up as a fugitive from justice; 2. That a copy of an affidavit was presented, charging Clark with certain acts which the governor of Rhode Island certifies are made criminal by the laws of that state; 3. That the affidavit is certified by the governor of Rhode Island to be duly authenticated. Here then is a literal compliance with the constitution and laws

of the United States, and the governor of New-York had full power and authority to issue his warrant, to direct Clark to be arrested and delivered over to the agent of the state of Rhode Island.

Having thus inquired into and ascertained what are the duties of other officers, we are next to inquire into our own duties. These are to be found in our statutes. They direct, 2 *R. S.* 567, 8, 9, that the court or officer authorized to allow the habeas corpus shall, upon the return thereof, proceed to examine into the facts contained in the return. If no legal cause be shewn for the imprisonment, the party shall be discharged ; but if he is legally detained, he shall be remanded. The provisions of our statute seem to contemplate an imprisonment upon a charge of an offence against our own laws ; but the prisoner is entitled to the benefit of those provisions, so far as they are applicable. The 48th section, page 569, permits the party, upon the return of the habeas corpus, to deny on oath any of the material facts set forth in the return, or allege any fact to shew the detention unlawful : and then the court or officer shall, in a summary way, proceed to hear proofs and allegations, and dispose of the party as justice may require. Under this section, the prisoner has made an affidavit denying all criminality or fraud in relation to the Burrillvile Bank, which are charged against him in the affidavit presented to the governor of this state. But whether he is guilty or not, is not the question to be decided here ; it is whether he has been properly *charged with guilt,* according to the constitution and the act of congress. The prisoner does not deny any fact set forth in the warrant upon which he has been arrested. It is not denied that the governor of Rhode Island has demanded him as a fugitive from justice. It is not denied that an affidavit charging him with criminality was presented to the governor of New-York ; nor is it denied that the governor of Rhode Island has certified that the affidavit is properly authenticated. These are the material facts. Governor Throop does not assert the prisoner's guilt, but that he had before him such evidence as the law directed, to authorize the issuing his warrant. Whether the prisoner is guilty or innocent is not the question before us ; nor is any judicial

NEW-YORK,
May, 1832.

In the matter
of Clark.

tribunal in this state charged with that inquiry. By the constitution, full faith and credit are to be given in all the states to the judicial proceedings of each state. When such proceedings have been had in one state, which ought to put any individual within it upon his trial, and those proceedings are duly authenticated, full faith and credit shall be given to them in every other state. If such person flee to another state, it is not necessary to repeat in such state to which he has fled the initiatory proceedings which have already been had, but he is to be sent back to be tried where the offence is charged to have been committed—to have the proceedings consummated where they were begun.

It has been objected that no crime has been committed, and that the proceedings contemplated by the statute of Rhode Island are of a *civil* nature merely. The first answer is that the statute of Rhode Island is not properly before us. An offence of a highly immoral character is stated in the warrant, and is certified by the governor of Rhode Island to have been made criminal by the laws of that state. This is evidence enough in this stage of the proceedings, of the nature of the offence ; but if we look into the statute of Rhode Island, which has been informally read from their statute book, we find a criminal offence ; it is this : that if any officer of a bank shall so fraudulently manage its concerns that the public or any individual dealing with it shall be defrauded in the payment of their just demands, such officer shall be prosecuted in the supreme judicial court by indictment, and on conviction the offender may be fined $5000. This is very plain language. There is to be a prosecution by *indictment*, and a fine is imposed which goes of course to the *public*—not to the party defrauded. There is nothing here like a civil remedy ; and though the indictment and trial are to take place in the supreme court, yet criminal proceedings do not commence there. The first proceeding is usually, if not always, before an inferior magistrate ; but in this case an affidavit is all that is required, provided it is duly authenticated.

It was also objected that a crime of greater atrocity was intended by the constitution than is here charged. It seems that when proceedings are instituted by the comity of nations

NEW-YORK,
May, 1832.

In the matter
of Clark.

they apply only to crimes of great atrocity, or deeply affecting the public safety. 1 *Kent's Comm.* 36. The statute of our state to which Chancellor Kent refers has been repealed, and I have not found the substance of it re-enacted in the revised statutes, but what may have been intended as a substitute— that certain offences committed out of our jurisdiction may be punished within it. 2 *R. S.* 698, § 4. With the comity of nations we have at present nothing to do, unless perhaps to infer from it that the framers of our constitution and laws intended to provide a more perfect remedy; one which should reach every offence criminally cognizable by the laws of any of the states; the language is—treason, felony, or other crime; the word crime is synonymous with misdemeanor, 4 *Black. Comm.* 5, and includes every offence below felony punished by indictment as an offence against the public.

An objection was also taken to the warrant for omitting to state facts; and among other cases that of *The King* v. *Kendall & Roe* was referred to, 1 *Salk.* 347, 12 *Mod.* 82, 1 *Lord Raym.* 65, where, upon a return to a habeas corpus the prisoners were bailed, having been arrested by a warrant of a secretary of state for aiding James Montgomery to escape, who was committed upon suspicion of treason, because the treason was not set forth in the warrant with an allegation that Montgomery did the fact. That case is not analogous; the offence of Kendall & Roe was aiding a person to escape from custody, and their offence would be graduated by that of the person assisted; it was important therefore that it should be stated; but this is a proceeding regulated by positive statute, ond the warrant need contain no more than the statute requires.

I am of opinion that the proceedings in this case have been regular; that the prisoner is legally in custody of the officer; and that he should be remanded.

The counsel for Clark then prayed the court to grant a writ of error to the court for the correction of errors in this state, and that until the hearing of the case before that tribunal all proceedings against him be stayed.

This motion was argued by the counsel, and the following points were taken on the part of the prisoner:

On final decision upon *habeas corpus*, the prisoner who is remanded has a right to a writ of error to the court for the correction of errors.  2 *R. S.* 573, § 70.

NEW-YORK, May, 1832.

If the nature of the decision allowed of *restitution*, or did not put the party in a remediless condition, then he may be left to prosecute his *appeal* without stay of other proceedings.

But where the effect of the decision *alleged* to be errone-ous is such as to be executed, and where restitution cannot be awarded, then it is a duty to stay the proceedings on such appeal in good faith, and certificate of counsel of a belief there is error.

To refuse such stay of proceedings, is, in effect, to deny the appeal, and defeat a right given by the constitution and by statute.

The Court allowed the writ of error, but held that they had no power to grant a stay of proceedings ; that although the statute gave the prisoner a right of appeal, yet as the legislature had not provided either for his detention or bail in the interim, it was not for the court to interfere.