*C. Fallon, esq.*, for commonwealth.
*Fairlamb & Barton, esqrs.*, for defendant.

COMMONWEALTH *v*. CHRISTOPHER KUCHEL.

[Charged with being a fugitive from justice from the state of New York, where he has committed as is alleged, the offence of obtaining certain goods under false pretences, contrary to the statute of said state in such case made and provided.]

AND now after argument of counsel, to wit, on the 5th of November, 1845, the RECORDER gave the following decision :

On the hearing of the above case, *H. M. Phillips, esq.*, counsel for the prisoner, moved his discharge, 1st, because the offence was not a crime within the meaning of the constitution; and 2d, because it is shown that he left New York some months after the alleged offence, if any was committed, was consummated. *J. S. Brewster, esq.*, for the commonwealth, opposed the

motion on the ground that the offence was recognised under the general designation of crime, and that there was no period determined by any law at which, if one left the jurisdiction, having violated the then existing law, such leaving was to be construed as not fleeing from justice.

As the decision of the question raised by the motion of the prisoner's counsel, involves much importance both as to the law and the practice in cases of persons charged with being fugitives from justice, I have thought it proper to put my views in writing, in order that some general idea may be had of the nature and objects of the constitutional provisions in such cases. Another reason has induced me to this conclusion, which is found in the fact, that much speculation is indulged in, as to the intended operation of these constitutional provisions.

By the 2d sect. of the 10th art. of the constitution of the United States, and the 2d subdivision of the section, it is declared that "a person charged in any state, with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the same state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

The congress of the United States on the 12th day of February, 1793, passed the following act, pointing out the mode by which the provision of the constitution should be enforced.

Sect. 1. "Be it enacted, &c., That whenever the executive authority of any state in the Union, or of either of the territories north-west or south of the river

Ohio, shall demand any person as a fugitive from justice of the executive authority of any such state or territory to which such person shall have fled, and shall moreover produce the copy of an indictment found, or an affidavit made before a magistrate of any state or territory as aforesaid, charging the person so demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged fled, it shall be the duty of the executive authority of the state or territory to which such person shall have fled, to cause him or her to be arrested and secured, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and cause the fugitive to be delivered to such agent when he shall appear: but if no such agent shall appear within six months from the time of the arrest, the prisoner may be discharged. And all costs or expenses incurred in the apprehension, securing and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory."

By the terms of the constitution, each state was authorized to make its own laws; or in other words, the sovereignty of the individual members of the confederation over their own citizens and soils, was not interfered with by the constitution, so far as related to those subjects, which such individual states had not ceded to the jurisdiction and authority of the confederation.

Among the most conspicuous of the sovereign rights

of the states, was that of making their own laws. Each state therefore, established among others, its own penal laws. By these penal laws, enacted by the different states as the wisdom of the state legislatures conceived the public interests required, a certain class of offences were made felonies, and others misdemeanors. In some states those offences which were constituted felonies, were in others only misdemeanors, and indeed in this connexion, it is not a little curious to contrast the several penal codes, as showing the severity or clemency of the various penal laws of the states.

The framers of the constitution of the United States —being aware of the right of each state to make its own penal laws, and knowing the impossibility of including in the general terms of a constitutional provision, all the offences which it would be the policy of the several states to punish with more or less severity, as inferior in grade to felonies—used in the 2d section as above quoted, the terms, treason, felony and *other crime*, as including all those offences which the safety of persons and property, required to be properly punished.

The object of this constitutional provision as to fugitives from justice, was to enable one state to demand from the authority of a separate and independent state, a citizen, who having violated the laws of his own, had voluntarily banished himself into another member of the confederation; without such provision, from the nature of the confederacy, he could not have been made amenable to punishment in the state whose laws he had violated, for there would have been no mode for effecting his arrest and delivery for trial. It is to be

observed, that the act of congress only provides a form of arrest and delivery; it does not forbid the arrest of the fugitive by the state authorities, before the "demand" is made by the executive of the state, from which such fugitive has fled.

It was as plain at the time of the formation of the constitution, as it is now, what offences were included under the terms treason and felony. It was as impossible then to have decided for what other offences fugitives should be demanded and delivered, as it would be now to determine, what other acts of individuals the several states may think fit to constitute as penal offences, and punishable as such.

The improvement of the social condition, while it may serve to leave as a dead letter on the penal code, certain statutes against acts which have ceased to be committed, nevertheless may engender in society the disposition to commit, and the committal of acts which the public interests may require should be prevented, by the punishment of those, who thus jeopardize such public interest.

Experience shows this to be the case. We have now, statutes declaring as misdemeanors, and punishing with imprisonment, offences, which at the time of the formation of the constitution of the United States, and the enacting of the provision in regard to fugitives from justice, were not and could not under the then condition of society, have been as such included within its meaning.

It cannot be contended however that for such offences a fugitive, having committed them, could not be demanded under the constitution. It was to guard

against such contingency, one too likely to arise, that the words "other crime" were added to the article of the constitution relative to fugitives from justice.

The crime of treason, and the various other crimes which were then or may have since been made felonies, were included by the constitution. And in order to give to each state the power of farther protecting its own interests by the punishment of such acts as such state had or might hereafter determine to be obnoxious to its welfare, the general words "or other crime" were superadded.

The wisdom of this course is self-evident. This provision of the constitution was to operate on all the states, for the equal benefit of all. Had the constitution limited the offences for which a fugitive from justice could be demanded and delivered, to treason and felony, then those states which had punished certain acts as treason and felonies, could only reap the benefit of this constitutional provision, while those states which had from causes best suited to their own social condition or public interest, defined like offences to be less than felonies, could not have received the advantages of this provision of the constitution. Hence an unequal operation of the constitution on the states. And again, had the articles of the constitution, spoken only of treason and felonies, those states which should desire to come under the conditions of the constitution, and possess that attribute of sovereignty which punishes for a violation of the laws, those citizens who have fled from its jurisdiction, and taken refuge in another sovereignty, they would have been obliged either to have their laws boldly set at defiance, or make certain offences felonies,

which they otherwise would not have done.  The effect of this latter course of policy would be in opposition to the public interests of such states.  And hence the right of sovereignty in such states would be abridged by the constitution, for the constitution would thus have an indirect power over the penal laws of such states.

The framers of the constitution were aware of this, and the words "or other crime" were used in its provision, for the reasons mentioned, and farther, that no state should be prevented from ameliorating its penal laws, and thereby losing the power of bringing back a fugitive from justice, who had violated them.

It is not necessary now to refer to what constitutes treason and felony.  They are crimes well understood. It may however be pertinent to the question now under consideration, to inquire what offences were intended to be included by the words "or other crime" in the constitution.

The words used are "treason, felony or other crime." It is clear, therefore, that by the words "other crime," it was intended to refer to such offences as were not conjunctive with treason or felonies.  The disjunctive conjunction "or" is used to couple the various offences proposed to be the subject matter of the operation of the provision.  In order to have a clearer idea of the class of offences, we will transpose the words, and it will read, as no doubt it was intended to be understood—or "other crime" *not* treason or felonies.  Now the degree of offences below felonies, are misdemeanors, and therefore all misdemeanors are included in the words "other crime," for it cannot be supposed that the constitution

only intended such offences as might be less than felonies and not misdemeanors, thus creating a new class of offences denominated crimes which were neither felonies or misdemeanors.

If misdemeanors were only proposed to be embraced by the words "or other crime," why was not the word "misdemeanor" substituted for "or other crime?" We have a reply to this question in the views already given. The constitution did not pretend to interfere with the laws of states, and hence if the word misdemeanor had been used, it might have excluded offences which were or might be made punishable by the penal laws of the states, and yet not be "misdemeanors" as technically understood—for this provision of the constitution must have a strict interpretation given to the words it contains. This view of the subject is fully sustained by chief justice Savage, in the case of John L. Clark, 9 Wendell 212: the chief justice held that "the word crime" "includes every offence below felony punished by indictment as an offence against the public."

The conclusion therefore becomes irresistible, that all offences less than felonies, including misdemeanors, were intended to be brought within the meaning of the words "or other crime."

The word crime is synonymous with offence; and it appears to me to be clear, that the constitution intended that all persons who should commit an offence against the laws of any state, for which he could be punished by its penal laws, were he in jurisdiction of such state, and under the sovereignty of her authority, should not be exempt from such punishment, by voluntarily banishing himself from the territory of such state. The

16

rights of state sovereignty were to be preserved from the execution within their several limits, of the process of other states; and yet not to work injustice to a state whose laws were violated, and the offenders fled into another, the constitution pointed out the mode by which the fugitive should be demanded and delivered up for punishment. It therefore declared that the executive authority should demand the fugitive.

When such demand is made, in the manner designated, it is the imperative duty of the authorities of the state in which the fugitive is, to deliver him accordingly. The constitution declared that such fugitive "*shall be delivered* up, to be removed to the state having jurisdiction of the crime."

The state having jurisdiction of the crime, whose laws have been violated, is the only object of the protection of this provision; and to this end the constitution is declaratory in its provision, as well as the act of congress referred to. Vattel, 6 b., ch. 6, sect. 76, says that "the sovereign who refuses to deliver up the guilty, renders himself, in some measure, an accomplice in the injury and becomes responsible for it." So Grotius, 6 b., ch. 21; and see also, Burlamaqui, part 4, ch. 3, sect. 19 to 23. These writers affirm the duty of states to give up fugitives; and on this principle the provisions of the constitution and the act of congress were based.

It is not necessary but to refer to these elementary writers for the principle—our own laws are clear and positive on the subject.

In 4 Johns. Chan. Rep. 106, the chancellor decided it "to be the duty of the civil magistrate to commit such fugitive for a reasonable time, to the end that the proper

authorities may make application for his surrender,"
&c.

We now are brought to the consideration of the prac-
tice, which the act of congress has given rise to—as
between the several states or territories claiming fugi-
tives from justice, under the constitution. The act
provides, that whenever the executive authority of one
state shall demand any person from the executive au-
thority of the state into which he shall have fled—he
being charged with having committed treason, felony,
or other crime, and shall moreover, that is, in addition
to such demand, produce the copy of a bill of indict-
ment found, or an affidavit made before a magistrate of
any state or territory and certified as authentic—it shall
be the duty of the executive authority to cause such
person to be arrested and secured, and notice given to
the executive authority making the demand, or agent,
and cause him to be delivered to such agent, when he
shall appear, &c.; but if no such agent shall appear in
six months, then such person shall be discharged.

This act of congress is divided into two provisions,
the first relating to the arrest and delivery of the fugi-
tive, and the other to the delivery if arrested. In both
cases it is declaratory in its character, and makes it the
imperative duty of the executive of the state, into which
such fugitive shall have taken refuge, to deliver such
fugitive when arrested and demanded. The words of
the act are, "it shall be the duty of the executive au-
thority of the state or territory to which such person
shall have fled, to cause him or her to be arrested and
secured;" and it is equally imperative as to the delivery
—"and cause the fugitive to be delivered."

No authority is directly or indirectly given by either the constitution or the act of congress, to the executive authority of the state or territory into which such fugitive shall have fled, to examine into the question of his guilt or innocence. The executive is not the proper authority, under any circumstances, to inquire into, or institute judicial proceedings. Neither is such executive to know what are the laws violated, nor what, under the decisions of the courts of such state, constitutes probable cause; not having this power, he cannot delegate it to the judiciary of his own state. Such a course would interfere with the sovereignty of the state from which such fugitive has fled.

The act of congress negatives the idea that any such power is to be exercised by the authorities of the state receiving such fugitive, for the act provides that the fugitive shall be " arrested" and " secured" and " delivered" on the affidavit before a magistrate; thus plainly recognising the fugitive as in the condition of a person about to be primarily arrested, prior to a hearing before the proper authorities of his state, or the state from which he has fled.

If therefore a fugitive be found in a state into which he has fled, he can be arrested as such fugitive, on oath or affirmation made before the proper authorities of the state in which he is found, being charged as a fugitive from justice from a state where he has committed treason, felony or other crime, as the case may be—whereupon he may be demanded; if he be not demanded, he can have his redress against the person causing his arrest, the magistrate requiring bail of such prosecutor for his appearance to provide for such contingency; the

ends of justice require this to be done—and courtesy between states, indeed the custom, has made this usage common law. It is not prohibited by any law. To wait for a demand in the first instance, would but give greater facilities for such fugitive to avoid detection.

We now come to the last subject of inquiry. What constitutes a fugitive from justice? It is obvious that a person having committed any offence which would subject him to punishment, if found in the state where the offence was committed, and leaving such state to avoid such punishment, is a fugitive from justice. It matters not what time has elapsed from the commission of the offence till his arrest—there is no statute of limitation to criminal complaints. Judge Vanderpool has decided this point in 7 Law Reporter 386.

Under these views, I think it my duty to secure the prisoner, so he may be delivered when demanded.

*H. M. Phillips, esq.*, for commonwealth.
*J. S. Brewster, esq.*, for defendant.