# THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS DRAPER, Appellant, v. ROBERT A. PINKERTON, Respondent.

*Warrant of rendition, of fugitive from justice — the court cannot inquire into the truth of the facts recited in it — The governor cannot inquire as to the truth of the charge.*

Where a warrant is issued by the governor for the rendition of a fugitive from justice, the court cannot go behind the warrant and inquire into the truth of the facts recited in it.

The governor, in determining that the act of Congress has been complied with, has no jurisdiction to inquire into the truth of the charges made, or to look outside of the papers presented, to determine whether or not the person demanded is a fugitive from justice.

The fact that the person has committed a crime in another State, and that he has been found in this State, establishes conclusively that he is a fugitive from justice.

*Semble*, that when the rendition warrant is accompanied by the papers on which

it issued, the question as to the sufficiency of those papers, as a compliance with the act of Congress, is before the court.

CERTIORARI to review an order made at Special Term, upon the return to a writ of *habeas corpus*, remanding the relator to the custody of the sheriff. The relator was arrested under the following warrant:

STATE OF NEW YORK, EXECUTIVE CHAMBER, }
LUCIUS ROBINSON, *Governor of the State of New York.* }

*To the sheriff of the county of New York, and the sheriff's constables and other peace officers of the several counties in the said State.*

Whereas, It has been represented to me by the governor of the State of Massachusetts that John Leary, James Brady, James Draper and James Grier stand charged with the crime of breaking and entering the Northampton National Bank, and stealing the moneys thereof, committed in the county of Hampshire in said State, and that they have fled from justice in that State and have taken refuge in the State of New York; and the said governor of Massachusetts having, in pursuance of the Constitution and laws of the United States, demanded of me that I shall cause the said John Leary, James Brady, James Draper and James Grier to be arrested and delivered to Robert A. Pinkerton, who is duly authorized to receive them into his custody, and convey them back to the said State of Massachusetts; and

Whereas, The said representation and demand is accompanied by a copy of this indictment, whereby the said John Leary, James Brady, James Draper and James Grier are charged with the said crime, and with having fled from said State and taken refuge in the State of New York, which is certified by the said governor of Massachusetts to be duly authenticated, you are therefore required to arrest and secure the said John Leary, James Brady, James Draper and James Grier wherever they may be found within the State, and to deliver them into the custody of the said Robert A. Pinkerton, to be taken back

to said State from which they fled, pursuant to the said requisition.

Given under my hand and the privy seal of the State, at the city of Albany, this twenty-eighth day of June, in the [L. S.] year of our Lord one thousand eight hundred and seventy-seven.

By the governor,

L. ROBINSON.

EDWARD MIGGAEL,
    *Acting Private Secretary.*

*Samuel D. Morris* and *Charles W. Brooke,* for the relator, appellant.

*Winchester Britton,* for the respondent.

GILBERT, J. :

To justify the issuing of a warrant of rendition of a fugitive from justice, it must appear, First. That a demand of him as a fugitive from justice has been made by the executive authority of the State where the crime charged was committed. Second. Such demand must be accompanied by the copy of an indictment found, or an affidavit made before a magistrate of said State, charging the person so demanded with having committed treason, felony or other crime ; and, Third. Such copy must be certified as authentic by such executive authority. (U. S. Const., art. 4, § 2; U. S. R. S., § 5278.) All this was done in the case before us, as appears from the recitals in the rendition warrant under which the relator was arrested. The court cannot go behind such warrant and inquire into the truth of the facts recited in it. When the rendition warrant is accompanied by the papers on which it issued, the sufficiency of those papers as a compliance with the act of Congress no doubt is before the court, and such papers may be examined for the purpose of determining that question. If the papers are insufficient the prisoner is entitled to be discharged, because the warrant has been issued in a case not authorized by law. But where the papers presented to the governor do not accompany the warrant, such a question cannot

arise, for the court has not the means of compelling a production of the papers. The only matters to be determined in the latter case are the sufficiency and regularity of the warrant, and those must be determined by what is stated in the warrant itself. The decisions of the courts of this State upon this subject appear to be quite uniform (*In re Clark*, 9 Wend., 212; *Soloman's Case*, 1 Abb. [N. S.], 347; *People ex rel. Connors* v. *Reilley*, 11 Hun, 89; *People ex rel. Lawrence* v. *Brady*, 56 N. Y., 182), and they rest, as it seems to me, upon sound principle. The writ of *habeas corpus* cannot properly perform the functions of a *certiorari* or a writ of error.

The duty of the governor of this State to issue the rendition warrant was imperative. Having performed the *quasi* judicial function of determining that the act of Congress had been complied with by the governor of Massachusetts, the remaining part of his duty was ministerial only. Nor did the performance of such duty depend upon the truth of the charge, in other words upon the guilt or innocence of the person demanded. An inquiry upon that subject would have been wholly irrelevant. The governor is vested with no jurisdiction to determine the questions that would arise upon such an inquiry. (56 N. Y., *supra*.) Nor can he inquire, *aliunde* the papers presented to him, whether the person demanded is a fugitive from justice. The gist of the proceeding is the apprehension of a person in this State, for a crime which he is charged with having committed in Massachusetts. The charge that he committed a crime in that State, coupled with the fact that he is found in this State, is conclusive upon the question whether he is a fugitive from justice. For when a crime is committed in Massachusetts, and the person accused of that crime is not in that State, but is elsewhere, he is of necessity a fugitive from justice. He may have left his home in New York, committed a crime in Massachusetts, and then immediately returned to his home. Nevertheless in such a case, if he is not a fugitive from the territory of Massachusetts, he is one from its justice, and I think that the fact that he is found in another State is sufficient evidence that he has fled from the State where he committed the crime. No exception to the sufficiency of such proof in this case exists, for the fugitive (assuming that he is the person named in the warrant) is the relator now before the court. In *Adams' Case*

(7 Law Reporter, 386) a citizen of Ohio committed a crime in New York and returned home. He was subsequently surrendered from Ohio on the demand of the governor of this State as a fugitive from justice. Having been brought up before VANDERPOEL, J., of the Superior Court, in the city of New York on *habeas corpus*, it was claimed that he had not fled from this State, but the justice (the full court sitting with him) held otherwise. A similar decision was made by the Supreme Court of Massachusetts in *Kingsbury's Case* (106 Mass., 227). Such, it seems to me, is a correct exposition of the law, for if the rule were otherwise the purpose of the constitutional provision on this subject would be frustrated to a great degree, and the several States would be mere sanctuaries for the protection of criminals who had committed crimes in another State.

The only remaining question relates to the identity of the prisoner. He is called in the rendition warrant James Draper. That is the name by which he is indicted. There is evidence that his real christian name is Thomas, but taking the whole evidence, we think it was correctly determined that he is the person intended, whatever his real christian name may be.

The order must be affirmed, with costs and disbursements.

BARNARD, P. J.. and DYKMAN, J., concurred.

Order affirmed, with costs and disbursements.