The People *v.* Martin.

SUPREME COURT.  At Chambers.  Before *Edmonds,* Justice. November, 1848.

THE PEOPLE *vs.* MARY MARTIN and CAROLINE MARTIN.

On habeas corpus, how far the court or officer granting it, is bound by the return, or may go behind it.

In criminal cases where an indictment has been found, he can not go behind the indictment, because there are no means of ascertaining upon what the indictment was founded.

But on a commitment before indictment, the whole question of guilt or innocence is open for examination on the return to the writ of habeas corpus, and the inquiry is not necessarily confined to an examination of the original depositions.

In such cases, under our revised statutes, the proceedings on a habeas corpus ar: in the nature of an appeal from the decision of the committing magistrate.

ON the return to a writ of *habeas corpus* sued out for the prisoners, it appeared they were detained on a full warrant of commitment for trial on a charge of grand larceny issued by one of the police magistrates of the city.

They filed their allegations in answer to the return, setting up that they were arrested without warrant by a person not a police officer.  That when taken before the magistrate, he refused to examine the complainant in their presence, though they demanded it and committed them for trial.  The allegations also averred the innocence of the accused, and that the money they were accused of stealing, was given to them under pretence of teaching French, but really for purposes of seduction.

On filing these allegations, *McKeon,* district attorney, and

*Galbraith*, for the prosecution, insisted that the warrant of commitment being regular on its face, was conclusive on *habeas corpus*, and no inquiry could extend behind it

*A. Nash*, contra.

January 8, 1849, EDMONDS, J., delivered his opinion. — It is claimed in this case, in behalf of the prosecution, that the commitment of the magistrate is conclusive upon me, and that I have no right on this return to look beyond the question of its regularity or that if I do look beyond it, I can look only at the depositions taken before the magistrate.

I had understood the law otherwise, and have always supposed that by means of this writ, the officers who were authorized to allow it, were by its very nature clothed with a certain revisory power over those by whose mandate any person might be restrained of his liberty.

The earnest manner in which, however, the contrary doctrine was pressed upon my attention, the construction which has been put upon the decision of this court in the McLeod case, and the fact that the legislature has, once at least (by depriving the judges of the superior tribunals, of the power of revising the action of the committing magistrate in fixing the amount of bail), departed from the great principles of the *habeas corpus* law, have caused me to hesitate in yielding to my first impressions, which I confess were rather the fruits of the reading of my early boyhood than of riper years, and have induced me, at some labor, to review the law on this subject at large. I, by no means, regret this, though it has been somewhat difficult to find among the pressing nature of my other avocations, time enough to devote to a task involving so extended an examination as I have given the subject, for an accurate and intimate knowledge of the properties of this great instrument of personal liberty, the writ of *habeas corpus*, can not but be valuable to every citizen.

The language of our statute, " of writs of *habeas corpus* and *certiorari*, when issued to inquire into the cause of detention"

(2 *R. S.* 567), is not sufficiently definite to leave no room for doubt on this question. Every person committed, detained, confined or restrained of his liberty under any pretence whatever (except in a few enumerated cases), may, it is true, prosecute this writ. On the return of the writ, the facts contained in the return may be examined into as well as the cause of the confinement, and if no legal cause be shown therefor, the party may be discharged. (*Ib.* 567.) Upon these enactments, for they are not new, it has been held that the officer allowing the writ out of court could not go behind the return. To remedy that, section 50 was enacted (*Ib.* 569), giving to the imprisoned party the power to deny any material fact set forth in the return, or to allege any fact to show the detention illegal or that the party was entitled to his discharge, whereupon, the officer may hear such allegations and proofs, as may be produced in support of the detention or against the same, and dispose of the party as·the justice of the case may require.

This language is broad enough to confer upon the officer the most ample power on *habeas corpus*, to inquire into the guilt or innocence of the party as to the offence charged, for on that, if his detention be not illegal, he may be entitled to his discharge. But it has been held that on *habeas corpus*, the court .or officer will not try the question of guilt or innocence. (1 *Ch. Cr. L.* 130.)

And Cowen, J., in McLeod's case (1 *Hill R.* 394), is very explicit in laying down the same doctrine, and he declares that the provision of the statute which I have quoted, would be satisfied by being limited to the lawfulness of the authority under which the prisoner is detained, without being extended to the force of the evidence upon which the authority was exerted. (*Ibid,* 404.)

And in the statute to which I have referred, I mean the police law relative to this city, the legislature have gone some ways to sanction the same doctrine. So that with this positive enactment in the police law, and this construction of the *habeas corpus* act, the power of the committing magistrate as to the question of guilt or innocence, and as to the amount of bail to

be required, would become absolute, irreversible and above all review. A power of this extent would ride over all the courts in the land, and become perfectly despotic, if it was not subject to review and inspection.

I have already had practical evidence of the result of such a state of the law. In one case brought before me, the committing magistrate had refused to let a party to bail, who was accused merely of a breach of the peace; thus arbitrarily, and as it was insisted before me, without the possibility of review or correction, putting assault and battery upon an equal footing with murder. In another case of assault and battery, the magistrate had fixed the amount of bail at some $16,000, and I was admonished that under that police law, I incurred the danger of committing a misdemeanor, if I reduced the amount. So that I was placed in the dilemma of running the hazard of an indictment or of violating my oath of office and the constitution, which forbids excessive bail. Of course I incurred the hazard, but not without some reflection upon the character of legislation which could thus jeopard personal liberty, and at the same time place a judge of the highest criminal court in the state, in such a position, that he could carry out the constitution only by incurring the hazard of becoming himself a criminal at his own bar.

Such cases must and will occur again, if the law is such as to sanction them, and I have therefore been the more anxious in my researches, in order to ascertain with certainty, whether such is, in fact, the state of the law among us.

I have already intimated that the language of Mr. Justice Cowen, in McLeod's case, was broad enough to sustain this doctrine, and if that was an authoritative decision of the court upon the point, I should be bound to obey it as the law of the land until it should be reversed by an appellate tribunal or altered by the legislature. But fortunately that language is entitled to no such binding force. That point was not before the court. The *dictum* was *obiter*. The question raised there was, whether, *after indictment*, the court on *habeas corpus*, would entertain the question of guilt or innocence, and on that

The People *v.* Martin.

·question the authorities had been very uniform, that it would not; and for very plain and simple reasons, that as the testimony before the grand jury would not be written and could not be looked into, the court or officer on the *habeas corpus* could not ascertain on what evidence the grand jury had acted, and could not entertain the question without receiving precisely the same testimony which the jury would be obliged to receive on the trial, and thus, in fact, usurp the province of the jury. Hence it had been the practice of the English courts and our own, which was followed in the McLeod case, not to look into this question of guilt or innocence on *habeas corpus,* after indictment. But not so where the party was committed by the magistrate, nor even where he was committed on the coroner's inquest, because there were depositions which could be looked into. But even to this rule there were exceptions. *Bac. Abr. Hab. Cor. B. sec.* 11, says, that the court will sometimes after indictment examine the circumstances, and he cites the case of one indicted for piracy who was bailed because it appeared that it was the prosecutor himself who had committed the offence. In *Rex* v. *Crips,* referred to in *Cunningham's Rep.* 96, the party was bailed because of a mistake of the person of the party accused.

I do not, however, understand the rule, whether it has few or many exceptions, to deny the power after indictment to look beyond the commitment. It merely says, that the court will not, not that it can not do so, and for very good reasons, as I have already mentioned. For equally good reasons it may and does do so, as is shown by the many cases where after delay to bring on the trial of an indictment, the party has been discharged or bailed.

This rule, however stringent it may be held to be after indictment found, is by no means so, where the party is detained merely on the warrant of the committing magistrate. Ch. J. Marshall recognized this distinction in Burr's case. In *Benoit's case* ( 1 *Martin's Lou. R.* 142), the court looked into the testimony to see whether an illogical conclusion had not been drawn. Chitty lays down the rule ( 1 *Cr, Law,* 119), where a

person committed is advised that his commitment is illegal he may obtain relief by habeas corpus, and the proceedings thereon, *which is the only course of proceeding.* Indeed, wherever a person is restrained of his liberty, by being confined, whether it be for a civil or criminal cause, and it is apprehended that the imprisonment is illegal, he may regularly, by habeas corpus, have his body and the proceedings under which he is detained, removed to some superior jurisdiction having authority to examine the legality of the commitment, and upon the return to the writ the court are to examine and determine the legality of such commitment and do what to justice shall appertain in delivering, bailing or remanding him.

And he adds (*page 129*), if the court ascertain there was no pretence for imputing to the prisoner any indictable offence, they will discharge him. Even though the commitment be regular, the court will examine the proceedings and if the evidence appear altogether insufficient, will admit him to bail, for the court will rather look to the depositions which contain the evidence than to the commitment in which the justice may have come to a false conclusion.

Such is the English rule, thus stated by this respectable writer and sustained by abundant authority, and it necessarily confers on this writ an appellate attribute, and upon the court or officer to whom it is returned power to review the proceedings of the inferior magistrate on whose warrant a person may be committed.

The rule is the same in this country, and no stronger evidence of it need be given than the view which the United States Supreme Court have taken of it.

That court has, under the constitution, original jurisdiction only in cases affecting ambassadors and the like, and those in which a state shall be a party. In all other cases it has only appellate power. The judiciary act conferred upon it, and upon the judges thereof, power to issue writs of habeas corpus — a power which they could not exercise unless the writ had properly an appellate character.

The question has frequently been before that court and its

appellate character has been repeatedly maintained. (*Bollman and Swartwout,* 4 *Cranch,* 75; *Ex parte Kearney,* 7 *Wheat.* 42; *Ex parte Watkins,* 7 *Peters,* 200, where Ch. J. Marshall says it is in the nature of a writ of error which brings up the body with the cause of commitment; *Ex parte Burford,* 3 *Cranch,* 447; *In the matter of Metzger,* 5 *Howard,* 176; *Ex parte Barry,* 2 *Howard,* 65.) It is an essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted, and does not create the cause. (*Marbury* v. *Madison,* 1 *Cranch,* 175.)

The United States Supreme Court has no common law jurisdiction. It owes all its powers to the constitution and the statutes, and so far as the habeas corpus is concerned, uses the writ only as it ministers to its appellate jurisdiction.

Our supreme court is, however, different in this respect. It has all the common law powers of the King's Bench, in which this remedial writ has been one of its instruments of administering justice for very many years, and the judges out of court have the same authority conferred on them by statute.

Under the common law powers it has always been competent for the court in term to inquire in the broadest manner into the legality of the imprisonment and for that purpose to go behind the return. The books are full of such cases, and the refusal of the king or the lords in council, or in other words that courts giving to the warrant of the king and the star chamber the same binding and controlling force which in this case is claimed for the warrant of a police justice, was a prolific source of trouble in the reign of Charles I, drew on a parliamentary inquiry and produced the *petition of right* (3 *Car.* 1), which recites this illegal judgment and enacts that no freeman shall be so imprisoned and detained. (3 *Bl. Com.* 134.)

The revision of our habeas corpus law in 1813, extended its provisions to persons detained on civil process, while the English statute, from which ours had been copied, confined it to criminal cases.

Our court, in *Cable* v. *Cooper* (15 *J. R.* 152), upon this new

provision of the statute, gave a similar construction and denied to an officer or judge acting upon a habeas corpus out of term the power of looking beyond the return. This decision was made in January, 1818, and the legislature, with commendable promptness and in close imitation of the action which as before mentioned, "produced the petition of right," in the same session passed a law correcting that judgment.

The act passed April 21, 1818, recites that "Whereas doubts are also entertained whether returns made to writs of *habeas corpus* issued under said act are traversible or examinable by facts *dehors* the returns," and enacts that the officer before whom a prisoner is brought shall examine into the facts contained in the return, *and into the cause of the imprisonment*, and remand, bail or discharge, as the case shall require, and to justice shall appertain. (*Laws of* 1818, *Ch.* 277, *p.* 298.) Out of this enactment grew the existing provision of the revised statutes authorizing the prisoner to deny any of the material facts set forth in the return, or allege any fact to show that his detention or imprisonment is unlawful, or that he is entitled to his discharge. (2 *R. S.* 471, § 50.) The note to 3 *Hill,* 658, n. 30, says, that "when the return is that a party is detained by process, the existence and validity of the process are the only facts upon which issue can be taken. These alone are the material facts within § 50, not whether the process is founded on sufficient evidence or any evidence at all." If this is so, then is the principle of *Cable and Cooper,* 15 *J. R.,* restored, the act of 1818 reversing that case rendered nugatory, and § 50 of our *habeas corpus* law shorn of very much of its benignant power. But it is not so. The cases cited by the writer do not sustain his position. 9 *Wend.* 212, one of his cases, was on a requisition from another state for a fugitive from justice, in which the court refused to look behind the warrant, because that would in effect be removing the trial of the merits from the other state to this. The case of McLeod, another one he cites, I have already shown was, in this regard, nothing more than a refusal of the court to go behind an indictment; and his remaining authority (11 *Ad. & Ellis,* 274 § 3) was upon the power conferred

The People *v.* Martin.

by an English statute, in respect to which the court in that cause say, " if the warrant returned be good on the face of it, we can inquire no farther." Can that be said of a statute which had its existence in a desire to remove doubts whether facts out of the return could be inquired into, and which, to effect its purpose, declares that the prisoner may allege *any* facts to show his detention illegal or that he is entitled to his discharge?

On commitments by final process upon summary convictions, it has long been the practice to examine on *habeas corpus* the record of conviction, and if void to discharge the prisoner. (*Regina* v. *Chancey*, 6 *Dowl. P. C.* 281, 1 *Mod.* 102; *In re Sweatman*, 1 *Cow.* 144, *Bac. Abr. Hab. Cor. B. Pl.* 13; *In re Eliza Phillips*, 5 *N. Y. Legal Observer*, 130; *Rex* v. *Elwell*, 2 *Str.* 794.) And indeed final process may in all cases be impeached by showing either that there was no judgment, decree, conviction, &c., or that the judgment, &c., was absolutely void. (*Randolph Case*, 11 *Am. Jurist*, 338; *Ex parte Beatty*, 12 *Wend.* 229; *Riley's Case*, 2 *Pick.* 172.)

So, too, where the warrant was legal but the party illegally arrested upon it, (*Pleasant's Case*, 11 *Am. Jurist*, 257; *Ex parte Beeching*, 6 *Dowl. and R.* 209,) Or was entitled to his discharge by something occurring after his arrest. (*McLeod's Case*, 25 *Wend.* 572; *State* v. *Ward.* 3 *Halst. R.* 120.)

And in all cases, even before our act of 1818, and at common law, the prisoner before indictment might insist that the depositions be looked into on *habeas corpus.* ( 1 *Ch. Cr. Law*, 127; *Petersd. on Bail*, 521; *Bac. Abr. Bail in Crim. Ca. D.*) Formerly those depositions could be brought up only on a writ of *certiorari*, but now we have a statute directing the magistrate to send them up, on a mere requisition of the officer allowing the *habeas corpus.*

I have thus taken occasion to express my dissent from the doctrines asserted in the note to 3 *Hill's Reports*, and more than once assented to, though never directly ruled, by the late Judge Cowen. It is the first time that the question has been directly presented for my adjudication, though it has been fre-

quently intimated before me, and I have taken time to examine fully into the matter, because I consider the doctrine as striking a fatal blow at the remedial powers of this great writ, and, if once established, as virtually repealing the statute which was enacted for the very purpose of affording against oppression under the forms of law the same protection which for a long time had been secured against imprisonment without due process of law. And as the reign of lawless violence has passed away and been succeeded by times when it is chiefly through the tribunals of justice that men seek to vent their evil passions upon one another, it becomes of the highest importance that this writ should be maintained in its integrity, as it is thus alone that the great duty of government can be discharged of demanding an account why the liberty of the citizen is restrained, wherever that restraint may be inflicted. (3 *Bl. Com.* 131.)

In thus asserting and defending the high prerogative of administering relief against unjust imprisonment, as existing in this court at common law and in its members out of court under the statute, I must not be understood as maintaining that the appellate power thus conferred can or will be exercised in a wild or loose or arbitrary manner, or that an appeal exists as a matter of course in every case of a commitment, with a right to demand a review of the grounds of the commitment.

Where the party is in custody by virtue of a final judgment of a court of competent jurisdiction, he must be immediately remanded. (2 *R. S.* 567, § 40.)

If the party is in custody on an indictment found for felony not bailable, there being no means of ascertaining the grounds on which the indictment is predicated, he will be remanded. (*McLeod's Case*, 25 *Wend.*)

If in custody on process merely irregular, he will be remanded on *habeas corpus* and be remitted to the proper court to correct and remedy the formal defects in its own process. (*People* v. *Nevins*, 1 *Hill*, 154; *Bank of U. S.* v. *Jenkins*, 18 *Johns.* 305.)

If detained on civil process, regular and valid on its face, the examination will be confined to the jurisdiction of the

The People *v.* Martin.

power which issued it, and to the inquiry whether some event has not since occurred to entitle the prisoner to his discharge (*Ibid.*)

If in custody on criminal process before indictment, the prisoner has an absolute right to demand that the original depositions be looked into to see whether any crime is in fact imputed to him, and the inquiry will by no means be confined to the return. Facts out of the return may be gone into to ascertain whether the committing magistrate may not have arrived at an illogical conclusion upon the evidence given before him, whether he may not have been governed by malice, or have exceeded his jurisdiction, and whether he may not have mistaken the law, or, in the language of Lord Ellenborough in the case of Sir Francis Burdett against the Speaker of the House of Commons (14 *East*, 1,) to ascertain whether the commitment was not palpably and evidently arbitrary, unjust and contrary to every principle of positive law or rational justice.

Confined within these limits, the inquiry can be effectual for the protection of personal liberty against oppression under color of legal process. Extended beyond it, it might be eminently mischievous in retarding the due administration of justice, and therefore, though the power of exceeding those limits is clearly conferred, no discreet judge will step over them, unless for some palpable and overpowering cause.

I shall in this case look beyond the return and inquire into the cause of commitment, and I shall not confine my inquiry merely to an examination of the depositions which have been returned to me and for these reasons.

The warrant which is returned to the writ of *habeas corpus*, is a full commitment for grand larceny in stealing from Thomas J. Crossman $40 in gold coin. No such warrant could issue until the complainant and the witnesses produced in support of the prosecution had been examined on oath *in the presence of the accused.* (2 *R. S.* 708, § 13.) Nor until the prisoner has also been examined in relation to the charge. (*Ibid,* § 14.)

The " allegations" put in by these prisoners in answer to the

return and sworn to by them, set up that they were arrested by a person not a police officer, that when taken before the police magistrate, *they demanded an examination of the complainant in their presence, which was refused,* and they were thereupon committed in default of bail.

If these allegations are true the imprisonment was clearly illegal. And they are facts out of the return, which the prisoners have a right to allege, and which it is my duty to inquire into.

---

WASHINGTON OYER AND TERMINER.    November, 1839.    Before *Willard*, Circuit Judge, and the County Judges.